IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TYLER ARMSTRONG,

    Petitioner,

v.                                                                               No. 1:19-cv-01066-JDB-jay
                                                                               Re: 1:15-cr-10001-JDB-6

UNITED STATES OF AMERICA,

    Respondent.

ORDER DIRECTING CLERK TO SEAL DOCUMENT,
DISMISSING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Tyler Armstrong,[1] filed a pro se motion to vacate, set aside, or correct his sentence (the "Petition") pursuant to 28 U.S.C. § 2255.[2] (Docket Entry ("D.E.") 1.) For the following reasons, the Petition is DISMISSED.

BACKGROUND

In accordance with an agreement with the Government, Armstrong pleaded guilty in 2016 to one count of conspiracy to distribute and possess with intent to distribute cocaine base and one count of conspiracy to distribute and possess with intent to distribute cocaine. (*United States v. Armstrong*, No. 1:15-cr-10001-JDB-6 (W.D. Tenn.), D.E. 316, 576-77 ("No. 1:15-cr-10001-JDB-6").) Both counts charged violations of 21 U.S.C. §§ 841(a)(1) and 846. The Defendant also waived his appeal rights in all but three narrow circumstances.

---

[1] The Court will refer to Armstrong as "the Defendant" in its discussion of the underlying criminal case.

[2] An attachment to the Petition contains Armstrong's social security number. The Clerk is therefore DIRECTED to SEAL D.E. 1-2.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). (*Id.*, D.E. 616.) The PSR recommended a base offense level of 24 under the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). (*Id.*, D.E. 616 at PageID 1379 (citing U.S.S.G. § 2D1.1(c)(8)).) The offense level was increased by 2 pursuant to U.S.S.G. § 2D1.1(b)(1). (*Id.*, D.E. 616 at PageID 1379.) That provision specifies a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1). Two more points were added on the ground that "the [D]efendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" (No. 1:15-cr-10001-JDB-6, D.E. 616 at PageID 1379 (citing U.S.S.G. § 2D1.1(b)(12)).)

The PSR advised that the Defendant was a career offender because the offenses to which he pleaded guilty were committed subsequent to his sustaining at least two felony convictions for either a controlled substance offense or a crime of violence. (*Id.*, D.E. 616 at PageID 1380 (citing U.S.S.G. § 4B1.1(b)(3)).) Armstrong's first predicate was comprised of two 2009 Tennessee convictions that were treated as a single career offender qualifier: a conviction for voluntary manslaughter and one for possession with intent to sell or deliver over .5 grams of cocaine. The second predicate was a 2014 conviction for possession with intent to sell or deliver over .5 ounces of marijuana.[3] In light of his career offender status, the Defendant was assigned an offense level

---

[3] Under Tennessee law, "[i]t is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" Tenn. Code Ann. § 39-17-402(6).

of 32.  (*Id.*, D.E. 616 at PageID 1380.)  Three points were deducted for his acceptance of responsibility.  (*Id.*, D.E. 616 at PageID 1380.)  Based upon a total offense level of 29 and a criminal history category of VI, the Guideline imprisonment range was calculated to be 151 to 188 months.  (*Id.*, D.E. 616 at PageID 1388.)

The Defendant's attorney, Scott G. Kirk, filed a position paper objecting to the career offender enhancement.  (*Id.*, D.E. 649.)  He argued that the 2009 felonies should not be counted because they occurred eight years earlier when Armstrong was seventeen years old.  Counsel also posited that the 2014 conviction was not a predicate offense because the sentence for that crime was not imposed until after his federal crimes occurred.  In an addendum to the PSR, the Probation Office found the objections to be without merit. (*Id.*, D.E. 660.)

A sentencing hearing was held on November 1, 2016.  (*Id.*, D.E. 665, 697.)  Defense counsel reiterated his objections to the application of the career-offender enhancement, but the undersigned rejected the arguments.  In particular, it was established that the sentence for Armstrong's 2014 Tennessee drug conviction was imposed in June of that year, but the conspiracy for which he was federally charged started before, and ended after, that date.  *See* U.S.S.G. § 4A1.2, cmt. n.1 ("A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.")  After a three-level reduction was applied for the Defendant's acceptance of responsibility, the undersigned found, as the PSR advised, that the resulting Guideline imprisonment range was 151 to 188 months.  Upon consideration of the

parties' arguments, the advisory range, and the sentencing factors set forth in 18 U.S.C. § 3553(a),[4] the undersigned imposed a concurrent sentence of 151 months in prison, to be followed by three years of supervised release.  Judgment was entered on November 4, 2016.  (No. 1:15-cr-10001-JDB-6, D.E. 668.)  The Defendant filed a notice of appeal.  (*Id.*, D.E. 669.)  On May 4, 2017, the Sixth Circuit enforced Armstrong's appeal waiver and dismissed the appeal.  (*Id.*, D.E. 728.)  On October 19, 2017, an amended judgment was issued enumerating the items forfeited by Defendant to the Government.  (*Id.*, D.E. 754.)

## DISCUSSION

The inmate originally filed the Petition as a motion in his criminal case.  (*See id.*, D.E. 846.)  He submitted the document to prison authorities for mailing on March 25, 2019.  Attached to the motion was a memorandum in support of relief.  (*Id.*, D.E. 846-1.)  By order dated April 3, 2019, the Court construed the motion as a § 2255 petition and directed the Clerk to file the Petition and the memorandum as the case-initiating materials in the present case.  (*Id.*, D.E. 848.)  Petitioner later retained counsel, who submitted a supplemental memorandum advancing arguments in

---

[4]Pursuant to § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors:  "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

4

support of the Petition.⁵ (D.E. 6.) Armstrong maintains that he was improperly designated a career criminal based on his 2014 Tennessee conviction for possession with intent to sell or deliver over .5 ounces of marijuana (Claim 1) and that counsel rendered ineffective assistance at sentencing and on appeal by failing to present that challenge (Claim 2).

Respondent, the United States of America, filed a response to the Petition on January 28, 2020. (D.E. 7.) The Government posits that the Petition should be dismissed as untimely. It also argues that, even if the Petition had been timely filed, the claims are, variously, procedurally defaulted, non-cognizable, and without merit. Petitioner did not file a reply, although he was allowed to do so. (*See* D.E. 4.)

I.      Legal Standards.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the

---

⁵The supplemental memorandum also concurs with the Court's decision to construe the motion filed in the underlying criminal case as a § 2255 petition.

burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. *Strickland*'s two-part standard is not confined to claims of trial counsel ineffective assistance, but also applies to claims of attorney error on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

6

outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II. Statute of Limitations.

As indicated *supra*, the Government argues that the Petition should be dismissed on the ground that Armstrong filed it after the expiration of the relevant limitations period. Upon review of the record, the Court determines that Respondent's position is well-taken.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. §§ 2244(b) and 2255 to limit a defendant to his direct appeal and one collateral attack, filed within one year of the date his conviction became final. 28 U.S.C. § 2244, *et seq*. Paragraph (f) of § 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

7

Generally, "a conviction becomes final for purposes of collateral attack at the conclusion of direct review." *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). For a defendant who takes a direct appeal but does not file a petition for writ of certiorari with the Supreme Court, the judgment of conviction becomes final "upon the expiration of the 90-day period in which [he] could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." *Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir. 2004). "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." U.S. Sup. Ct. R. 13(3).

The one-year statute of limitations in § 2255(f) is not a jurisdictional bar and is subject to equitable tolling under extraordinary circumstances. *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012). Equitable tolling requires the petitioner to show that (1) "he has been pursuing his rights diligently" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* Additionally, a credible showing of actual innocence will allow a petitioner to overcome the statute of limitations, rather than provide him an excuse for the late filing. *Yousafzai v. United States*, No. 17-1071, 2017 WL 3185189, at *2 (6th Cir. June 7, 2017) (citing *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)).

As noted above, the Sixth Circuit dismissed Petitioner's direct appeal on May 4, 2017. The conviction thus became final ninety days later on August 2, 2017, the last day for filing a petition for writ of certiorari. The § 2255 limitations period was triggered at that time and expired one year later, on August 2, 2018. The Petition, which was placed into the prison mailing system on March 25, 2019, is therefore untimely by nearly seven months.

8

Even if the limitations period were calculated from entry of the amended judgment, the Petition is still untimely. For a defendant who does not take a direct appeal, the judgment of conviction becomes final upon the expiration of the time for him to seek direct review. *Sanchez-Castellano*, 358 F.3d at 426. Under the Federal Rules of Appellate Procedure, a defendant in a criminal case normally has fourteen days from entry of judgment in which to appeal. *See* Fed. R. App. P. 4(b)(1)(A). The amended judgment in Armstrong's criminal case was entered on October 19, 2017. Because Petitioner did not appeal, the amended judgment became final fourteen days later, on November 2, 2017. The one-year limitations period would therefore have expired on November 2, 2018. Accordingly, the Petition, which was filed on March 25, 2019, is more than four months late under this alternative calculation.[6]

Armstrong has not addressed the untimeliness of the Petition, and thus has not argued that he is entitled to equitable tolling of the limitations period or that he is actually innocent of the crimes of which he was convicted.[7] The Petition must therefore be dismissed as untimely.

---

[6] To the extent that Petitioner may be asserting that the limitations period ran for one year from the date he discovered that the PSR was allegedly wrong, the proposition is without support. Under § 2255(f)(4), a § 2255 petition must be filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). That provision does not apply here, however, because Armstrong does not show that the alleged error in the PSR became discoverable only after his sentence was final.

[7] Petitioner argues in his supplemental memorandum that counsel's failure to present Claim 1 in his appellate brief was ineffective assistance requiring that he be allowed to file a new appeal and that "the timeliness requirement of his appeal should be waived." (D.E. 6 at PageID 33.) That argument does not address the timeliness issue as it relates to the Petition.

III. Claim 1.

Petitioner posits that he was improperly designated a career offender. His supporting argument is two-fold. First, he insists that his 2014 Tennessee conviction for possessing marijuana with intent to sell or deliver is not a predicate offense because he received a suspended sentence. Second, he argues that the crime is not a controlled substance offense because the sale of drugs under Tennessee law includes a "mere offer to sell[.]" (D.E. 6 at PageID 29.) The Government maintains that, even if the claim had been timely filed, it affords Petitioner no relief because it is procedurally defaulted, non-cognizable, and without merit.

A. Procedural Default.

"When a defendant fails to raise an issue at trial or on direct appeal, that issue is generally waived." *Poulsen v. United States*, 717 F. App'x 509, 513 (6th Cir. 2017) (citing *Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013)). "A claim that would otherwise be waived may be raised through a collateral attack under § 2255 if a defendant 'can demonstrate cause and prejudice to excuse his default.'" *Id.* (quoting *Huff*, 734 F.3d at 606). "Ineffective assistance of counsel can constitute cause for a procedural default." *Id.* (quoting *Huff*, 734 F.3d at 606).

Armstrong does not dispute that he defaulted Claim 1. He contends, however, that the default should be excused because counsel's failure to raise the issue at sentencing and on appeal constituted ineffective assistance.

The asserted cause for the default is identical to Claim 2. For the reasons set forth *infra* in the discussion of that claim, the Court determines that counsel was not ineffective at sentencing or on appeal for not presenting the arguments encompassed by Claim 1. The procedural default of

Claim 1 is therefore unexcused. Thus, even if the claim had been timely presented, it would be subject to dismissal as having been procedurally defaulted

B. Cognizability.

A "misapplication-of-an-advisory-guidelines-range claim is . . . not cognizable under § 2255." *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1573 (2019). "Indeed, every circuit to 'look at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.'" *Bullard v. United States*, 937 F.3d 654, 660-61 (6th Cir. 2019) (brackets omitted) (quoting *Snider*, 908 F.3d at 191), *cert. denied*, 140 S. Ct. 2786 (2020).

Claim 1 presents a challenge to the Court's application of the Guidelines' career offender provision. It is therefore non-cognizable in this § 2255 proceeding and is subject to dismissal on this alternative ground.

C. Merits.

As noted, Armstrong's first challenge to his career offender designation is that his 2014 Tennessee drug conviction does not qualify as a predicate controlled substance offense because he received mostly a suspended sentence for that crime. Specifically, he argues, the offense "cannot be counted as a predicate conviction for purposes of career offender classification because he served less than one year and one month . . . as a result of the Court['s] imposition of a suspended sentence[.]" (D.E. 1-1 at PageID 8.) He notes that "he was sentenced to a term of 2 years suspended sentence in which the Court released him after serving less than 90 days of imprisonment." (*Id.* at PageID 7-8.) He has submitted a document from the Dyer County, Tennessee, Sheriff's Office showing that he served sixty days on the conviction. (*See* D.E. 1-2;

11

*see also* No. 1:15-cr-10001-JDB-6, D.E. 616 at PageID 1384 ("2 years custody; all suspended but 60 days").) The Government maintains that the argument is wrong as a matter of law. The Court agrees.

> The Guidelines' career offender provision provides for an enhanced offense level
>
> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). A controlled substance offense is defined as a drug crime "punishable by imprisonment for a term exceeding one year[.]" U.S.S.G. § 4B1.2(b). "[W]hat counts in a predicate offense is the *possible* sentence a defendant faces, not the *actual sentence* imposed or served." *Goins v. United States*, Nos. 1:10-cr-119-HSM-SKL, 1:12-cv-142-HSM, 2015 WL 4723072, at *4 (E.D. Tenn. Aug. 10, 2015); *see also United States v. Apodaca,* 512 F. App'x 509, 513 (6th Cir. 2013) ("The designation of the offense under [state] law and the actual sentence imposed is irrelevant. The only relevant question is whether the [state] offense is punishable by a term exceeding one year.") (citing U.S.S.G. § 4B1.2, cmt. n.1 ("'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, . . . regardless of the actual sentence imposed.")).

In order for a defendant's previous convictions to qualify as "two prior felony convictions of . . . a controlled substance offense," U.S.S.G. § 4B1.1(a), the sentences must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)," U.S.S.G. 4B1.2(c). In other words, a prior felony conviction that is not countable under the Guidelines' criminal history computation provisions at §§ 4A1.1(a), (b), or (c) cannot serve as a career offender predicate. *See United States*

12

*v. Wilson*, 827 F. App'x 473, 482-83 (6th Cir. 2020) (prior drug trafficking conviction that did not receive criminal-history points under U.S.S.G. § 4A1.1(a), (b), or (c) did not qualify as a career offender predicate); *United States v. Martin*, Criminal Action No. 07-cr-20605-D1, 2014 WL 4926267, at *4 (E.D. Mich. Oct. 1, 2014) ("[A] prior felony conviction of either a crime of violence or a controlled substance offense may act as a predicate for a career-offender designation if it is punishable by more than a year imprisonment—regardless of the actual sentence imposed—and if it is countable for purposes of computing criminal history points.") (citing *United States v. Chatmon,* 565 F. App'x 345, 348 (6th Cir. 2014) and *United States v. Williams,* 753 F.3d 626, 637 (6th Cir. 2014)).

> The relevant computation subsections provide as follows:
>
> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
>     (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
>     (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
>     (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

U.S.S.G. §§ 4A1.1(a)-(c). "If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b).

Armstrong's 2014 conviction for possession of marijuana with intent to sell or deliver qualifies as a prior felony-controlled substance offense despite the fact that all but sixty days of the two-year sentence was suspended. First, the conviction was punishable by imprisonment exceeding one year. In Tennessee, possessing more than .5 ounces of marijuana with intent to sell

13

or deliver is a Class E felony. Tenn. Code Ann. § 39-17-417(g)(1). A Class E felony is punishable by imprisonment of one to six years. Tenn. Code Ann. § 40-35-111(b)(5). Second, the conviction was properly assigned criminal history points under U.S.S.G. § 4A1.1(b), as advised in the PSR. (*See* No. 1:15-cr-10001-JDB-6, D.E. 616 at PageID 1384.) That is, because the sixth months Petitioner was incarcerated represented "the portion" of the sentence "that was not suspended," U.S.S.G. § 4A1.2(b), the sentence qualified for two points under § 4A1.1(b), *see* U.S.S.G. § 4A1.1(b) (two points added "for each prior sentence of imprisonment of at least sixty days not counted in (a)").[8]

Petitioner's final challenge to his career offender status is also not well-taken. Armstrong argues that the Tennessee crime of possession of a controlled substance with the intent to sell or deliver "encompasses conduct—a 'mere offer to sell drugs'—that does not meet the definition of 'controlled substance offense.'" (D.E. 6 at PageID 29 n.1.) However, after the parties completed briefing in the present matter, the Sixth Circuit held that Tennessee possession with intent to deliver is not an attempt crime, but rather, "a completed crime[.]" *See United States v. Garth*, 965 F.3d 493, 497-98 (6th Cir. 2020). The offense is therefore a controlled substance offense under the career offender provision. *See id.* at 498 ("Garth's Tennessee conviction for possession with

---

[8] Petitioner relies in part on U.S.S.G. § 4A1.2(e)(1), which states that "[a]ny prior sentence of imprisonment exceeding one year and one month" is countable if it was imposed within fifteen years of the commencement of the federal offense. U.S.S.G. § 4A1.2(e)(1). He insists that, because he was imprisoned only six months on his 2014 offense, the conviction cannot be counted. His reliance on § 4A1.2(e)(1) is misplaced. More to the point, "[t]he trouble with [the] argument . . . is that he ignores [§] 4A1.2(e)(2)." *Martin*, 2014 WL 4926267, at *4. That paragraph provides that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e)(2). Petitioner's six-month prior sentence of imprisonment falls under that provision and was therefore properly assigned criminal history points.

14

intent to deliver is accordingly a completed controlled-substance offense."); *see also United States v. Graham*, 824 F. App'x 332, 334-36 (6th Cir. 2020) (citing *Garth*, 965 F.3d at 498) (defendant's Tennessee conviction for possession of drugs with intent to manufacture, deliver, or sell was categorically a controlled-substance offense under the Guidelines).  Claim 1 is therefore without merit in its entirety.

IV.     Claim 2.

Petitioner asserts that counsel rendered ineffective assistance at sentencing and on appeal by failing to raise the career offender arguments he presents in Claim 1.  But because those assertions are without merit, counsel did not perform deficiently by failing to advance them at either stage, and Petitioner was not prejudiced by counsel's conduct.  What is more, the Sixth Circuit dismissed Petitioner's direct appeal on the basis of his appeal waiver.  Accordingly, any alleged deficient performance by counsel in failing to make the arguments on appeal was not prejudicial for that additional reason.  Claim 2 is without merit.

For the foregoing reasons, the Petition is DISMISSED.  Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

15


encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[9]

IT IS SO ORDERED this 6th day of July 2022.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.